853 So.2d 814 (2003)
Christopher Lee BRYANT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01299-COA.
Court of Appeals of Mississippi.
June 3, 2003.
Certiorari Denied August 28, 2003.
*816 Rex K. Jones, Hattiesburg, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION *817 FOR REHEARING[1]
SOUTHWICK, P.J., for the court.
¶ 1. Christopher Lee Bryant was convicted of burglary, forcible sexual intercourse, and sexual battery by a circuit court jury. On appeal, Bryant argues that the lower court erred in denying the suppression of his confession, that the verdict was contrary to the overwhelming weight of the evidence, and that the State failed to prove the forcible sexual intercourse charge beyond a reasonable doubt. We do not agree with these assertions and affirm.

STATEMENT OF FACTS
¶ 2. On the evening of February 4, 2000, the victim L.B. completed her work-out at the YMCA in Hattiesburg. As she drove home, she noticed in her rear-view mirror a vehicle with unusual headlights, one bright and one dim, speeding past other motorists. When the vehicle got directly behind her, L.B. slowed so it could pass. The vehicle similarly slowed. L.B. pulled off into a familiar neighborhood. The truck, later identified as Bryant's, did not follow.
¶ 3. L.B. went home, ate, and began a bath. While bathing, L.B. heard the front door of her mobile home being kicked in. Bryant entered. He choked her and held her head under water. Bryant then raped L.B., blindfolded her, and forced her to perform oral sex on him. Bryant repeatedly threatened to kill L.B. if she looked at him. Bryant then put L.B. into a closet and left.
¶ 4. L.B. hastily dressed and went to a neighbor's house for safety. Her neighbor called police and the two waited for assistance. L.B. was taken to the emergency room and an examination for evidence of rape was conducted. L.B. gave police a physical description of her assailant.
¶ 5. Bryant was subsequently arrested and confessed to the crimes. At trial, L.B. identified Bryant as her attacker, recalling that he had spoken to her once before as she unloaded groceries in her apartment complex. Bryant was convicted after a three day trial, and sentenced to a total of one-hundred years based on his status as an habitual offender.

DISCUSSION
A. Confession
¶ 6. Bryant contends that the confession that he gave to authorities was improperly allowed into evidence during trial. Bryant submits that despite invoking his right to counsel, police denied him the opportunity to speak with his attorney. Bryant further argues that the waiver and confessions which followed were not voluntary and that the State failed to meet its burden in proving Bryant's voluntariness when it failed to produce one of the investigators as a witness.
¶ 7. When authorities arrived at Bryant's residence, they were operating under a valid arrest warrant for an unrelated traffic violation. Bryant's mother allowed police into the house and escorted them to Bryant's bedroom. Bryant was placed under arrest and handcuffed. Police informed him that he was also a suspect in the sexual assault case. Bryant was then read an explanation of his constitutional rights. Police obtained consent to search both Bryant's bedroom and his vehicle, yielding evidence of the clothes and the unusual headlights described by L.B.
¶ 8. As Bryant was escorted to an officer's car to be taken to the police station, Bryant asked his mother to contact Tracy *818 Klein, his attorney. Investigators heard this exchange. Detective Rusty Keyes told Bryant's mother to have Klein contact him at the station. Bryant's mother called Klein, who informed her that he would not represent Bryant on these charges. Klein said that, as a courtesy to the family, he would contact Keyes to find out "what they had on him." The parties dispute the number and sequence of phone conversations between Klein and Keyes, but it is clear that at some point Klein informed Keyes that he declined representing Bryant, and that Keyes informed Klein that Bryant had "given it up," which was explained to mean that he had confessed.
¶ 9. Bryant had been taken to the police station and secured in a room for several minutes while Keyes participated in a detectives' meeting. Keyes then spoke with Klein before entering the room where Bryant was detained. Keyes testified that he told Bryant that attorney Klein would not represent him. Bryant responded, "Well, there are some things I need to tell you, that I'm responsible for those two rapes of those girls." Keyes again recited the appropriate warnings, and Bryant confessed to the crimes.
¶ 10. Bryant has a constitutional right to counsel:
If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.
Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The circumstances surrounding Bryant's confession raise several important questions, which we address separately.
(1) Did Bryant successfully invoke his right to counsel?
¶ 11. The evidence suggests that Bryant did not directly inform the police that he was asserting his constitutional right to counsel. Rather, he directed his mother to contact his attorney, Tracy Klein. An "`assertion' means some kind of positive statement or other action that informs a reasonable person of the defendant's `desire to deal with the police only through counsel.'" Genry v. State, 735 So.2d 186, 196 (Miss.1999) (citing Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)). Here, Detective Keyes admitted overhearing Bryant's directive; indeed, Keyes told Bryant's mother to have Klein contact him at the police station. We find that a reasonable person would understand Bryant's intent to deal with police only through counsel. We therefore find that Bryant successfully invoked his right to counsel. Once this right is invoked, any interrogation "must cease until an attorney is present." Minnick v. Mississippi, 498 U.S. 146, 150, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).
(2) Was Bryant being interrogated when he supplied his confession?
¶ 12. Part of the necessary review is whether Bryant made a statement while in custody and while being interrogated. Hunt, 687 So.2d at 1159 (citing Miranda, 384 U.S. at 477-78, 86 S.Ct. 1602). Bryant was in police custody from the time of his arrest in his bedroom. He was advised of his rights. The critical time under review begins at the point of Bryant's statement to his mother as he was leaving his residence and ending at the point at the police station when he confessed. The record contains no evidence of police questioning during that interval. Bryant himself testified *819 during the suppression hearing that he was transported to the police station and placed in a small interview room alone for twenty to thirty minutes, then moved to another room with Officer Timothy Jackson for another fifteen or twenty minutes. The two engaged in conversation primarily about Bryant's father. Bryant was then returned to the small room where Keyes informed him that Klein had declined to represent him. Bryant admitted that he was informed of Klein's withdrawal prior to supplying his confession.
¶ 13. "`Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Therefore, the Miranda protections extend to "express questioning or its functional equivalent." Id. at 300-01, 100 S.Ct. 1682. The test does not examine the subjective intent of the police; rather, it asks if the officer should "have known his actions or statements were reasonably likely to elicit an incriminating response." Snow v. State, 800 So.2d 472, 497 (Miss.2001). Here, a lower court could properly find that Keyes' statement to Bryant regarding his attorney's withdrawal did not rise to the level of the equivalent of express questioning. The conduct of the Hattiesburg police did not constitute interrogation of Bryant at the time of his offered confession.
(3) Did Bryant knowingly, intelligently, and voluntarily waive his rights?
¶ 14. Once an accused has asserted his right to deal with police through counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Interrogation may resume after invocation of the right only if two conditions have been satisfied: (a) the accused initiates discussions; and (b) the accused knowingly and intelligently waives his rights previously asserted. Duplantis v. State, 644 So.2d 1235, 1242-43 (Miss.1994). Here again, the question distills to whether informing an accused of the status of his requested counsel constitutes interrogation. It was not. Bryant's statement that he wanted to talk at that point was at his own initiative. Bryant then executed an express waiver of rights. Bryant's confession was voluntary.
(4) Was Bryant denied the opportunity to meet with counsel?
¶ 15. Bryant suggests that Keyes' statement that Klein had withdrawn as his counsel is analogous to the factual situation in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). There, counsel and accused attempted to establish contact during police interrogation but were blocked by law enforcement. We find no apt similarity with Escobedo. Klein did not represent Bryant at any point. Klein himself admitted that his phone call to the police station was nothing more than a courtesy offered to Bryant's family. Because Klein was not Bryant's attorney, police did not impair Bryant's right to counsel by failing to facilitate contact between the two.
(5) Was Bryant's confession involuntary due to the influence of narcotics?
¶ 16. Bryant further asserts that his confession was involuntary due to the influence of narcotics. Bryant testified at the suppression hearing that he took some LSD laced with heroin and also smoked *820 some marihuana hours before he was taken into custody. He submits that his testimony of drug usage in addition to his mother's corroborating his drug habit are sufficient to support a claim of the involuntariness of his confession.
¶ 17. Voluntariness requires a finding that under the totality of the circumstances, the accused's statement was the result of his "free and rational choice." Porter v. State, 616 So.2d 899, 907-08 (Miss.1993) (citing United States v. Rogers, 906 F.2d 189, 190 (5th Cir.1990)). Detective Keyes, a former narcotics officer, testified at both the suppression hearing and at trial that Bryant did not appear to be under the influence of drugs or alcohol. The court deemed Bryant's confession to be voluntary, a fact-finding that is supported by the evidence.
(6) Did the State fail to meet its burden in proving the voluntariness of Bryant's confession?
¶ 18. Finally, Bryant argues that the State had to present testimony from Detective Scott Lindsey, one of the officers present when Bryant was placed into custody. Bryant relies on older Mississippi case law for the proposition that the State must offer all officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness. E.g., Lee v. State, 236 Miss. 716, 112 So.2d 254, 256 (1959). After the Miranda v. Arizona approach began in 1966, such older case law was largely displaced. A prima facie case of voluntariness is made from testimony by an officer or others with knowledge of the facts, that the confession was "made without threats, coercion, or offer of reward." Greenlee, 725 So.2d at 826 (quoting Chase v. State, 645 So.2d 829, 838 (Miss.1994)). Detective Keyes testified extensively regarding the voluntariness of Bryant's confession. Bryant did not assert that he was threatened or induced by promises to confess, so all the witnesses to the confession did not need to be presented. Agee v. State, 185 So.2d 671, 673 (Miss.1966), as modified by Thorson v. State, 653 So.2d 876, 888 (Miss. 1994).
¶ 19. Bryant's confession was admissible.
B. Weight of the evidence
¶ 20. Bryant also alleges that the jury verdict is against the overwhelming weight of the evidence. We do not set aside a verdict and order a new trial unless to allow the verdict to stand would constitute an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Bryant argues that the absence of investigation of other suspects, alleged discrepancies in the victim's identification testimony, the lack of physical evidence in the case, and the vagueness of Bryant's confession cumulatively amount to reasonable doubt.
¶ 21. Bryant first submits that authorities were obligated to develop other potential suspects. We do not find an obligation on the State to present proof of the breadth of its investigation. It is necessary but also sufficient that the State present proof that the defendant committed the crime.
¶ 22. Bryant next contends that L.B.'s identification of Bryant was inconsistent and unpersuasive. Such questions concern the credibility and weight of the evidence, the evaluation of which is within the province of the jury. White v. State, 722 So.2d 1242, 1246 (Miss.1998).
¶ 23. Bryant submits that the prosecution's lack of physical or scientific evidence constituted a failure to connect him with the crime. There was physical evidence admitted, however, specifically *821 Bryant's clothing obtained after his consent to the police search which matched L.B.'s physical description of her assailant. Additionally, L.B. identified Bryant as her attacker. Bryant also confessed, and the confession was admissible and admitted.
¶ 24. Bryant also submits that his confession failed to acknowledge in "express terms" the crimes charged. He relies on Dedeaux v. State, 519 So.2d 886, 889 (Miss.1988). However, the next sentence of the Dedeaux opinion is that "generally speaking, all voluntary statements or confessions of the defendant are admissible when offered by the State for what weight they may have in the case." Id. That applies here.
¶ 25. Bryant argues that because his statement refers to twice raping L.B. rather than raping her once, then forcing her to perform oral sex on him, that this did not constitute an express acknowledgment of the charge of sexual battery. However, Bryant's conviction did not rest on his statement alone. The jury had other weighty evidence to hold down its verdict.
¶ 26. We "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." McDowell v. State, 813 So.2d 694, 699 (Miss.2002). We are not convinced.
C. Sufficiency of the evidence
¶ 27. Finally, Bryant contends that he is entitled to a directed verdict on the charge of forcible sexual intercourse due to the prosecution's failure to prove each element of the crime. Specifically, Bryant relies on statutory language requiring the "joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female." Miss.Code Ann. 97-3-65(5) (Rev. 2000). Bryant then attempts to cast doubt on the factual circumstances satisfying the statutory requirement.
¶ 28. In reviewing a trial court's denial of a defendant's request for directed verdict, we consider all evidence in a light favorable to the State, discarding all evidence favoring the defendant. Taylor v. State, 656 So.2d 104, 107 (Miss.1995). We may reverse only if, after such a review, we find that no reasonable, hypothetical juror would find guilt. Tait v. State, 669 So.2d 85, 88 (Miss.1996).
¶ 29. L.B. consistently stated to authorities, to her treating physician, and in her testimony at trial that Bryant penetrated her. Bryant, in his confession, admitted to rape. The evidence proving Bryant's guilt was overwhelming. The motion for a directed verdict was properly denied.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY OF CONVICTION OF COUNT I BURGLARY AND SENTENCE OF TWENTY-FIVE YEARS; COUNT II FORCIBLE SEXUAL INTERCOURSE AND SENTENCE OF FORTY-FIVE YEARS; AND COUNT III SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED WITH SENTENCES TO RUN CONSECUTIVELY WITHOUT POSSIBILITY OF PAROLE. COSTS ARE ASSESSED TO LAMAR COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] This opinion is substituted for that originally issued. The rehearing motion is denied.