908 So.2d 163 (2005)
James C. WINDING a/k/a James Winding, Appellant.
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02613-COA.
Court of Appeals of Mississippi.
May 17, 2005.
Rehearing Denied August 2, 2005.
*164 Pamela A. Ferrington, Natchez, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., MYERS and BARNES, JJ.
MYERS, J., for the Court.
¶ 1. James C. Winding was convicted in the Circuit Court of Adams County, Mississippi of kidnaping and sexual battery and was sentenced to imprisonment for two thirty year terms, running concurrently. Aggrieved by the judgment of the circuit court, Winding appeals, raising the following four issues:
I. WHETHER THE TRIAL COURT LACKED JURISDICTION AND VENUE TO PROSECUTE COUNT TWO OF THE INDICTMENT.
II. WHETHER WINDING RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
III. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING *165 WEIGHT OF THE EVIDENCE.
IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A PAIR OF HANDCUFFS FOUND IN WINDING'S CAR.
¶ 2. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 3. James Winding, an Illinois resident, was accompanied by his aunt on a visit to Natchez, Mississippi to attend a funeral. On the night of September 28, 2002, Winding picked up a mentally retarded man by the name of C.S. from the parking lot of a Natchez high school. Though it is difficult to establish an exact chain of events through C. S.'s testimony, the gist of what occurred that night is clear.
¶ 4. Winding picked up C.S. from the parking lot of Natchez High School, drove C.S. to rural Wilkinson County, Mississippi where he sodomized him and left him naked in the woods. As a result, C.S. was forced to wander through rural Wilkinson County, until he found the home of Ruby Dixon. After C.S. arrived at Dixon's home, the authorities were contacted and C.S. was taken to receive medical treatment at the Natchez hospital.
¶ 5. Soon thereafter, the authorities were able to obtain a description of Winding's vehicle from C.S. An article which described the suspect's vehicle as a red Ford Mustang was published in the Natchez Democrat newspaper and, as a result, the police received a telephone call from Winding's grandmother, stating that her grandson drove a small red car, that Winding had just arrived in town, and that he had been present in both Natchez and Woodville, Wilkinson County, Mississippi.
¶ 6. Following the receipt of his grandmother's tip, Winding was soon located and was taken to the police station to be photographed. Winding was subsequently identified by C.S. from a photographic lineup. Police officers then searched Winding's vehicle and discovered a brown walking cane, some shoes and clothing, and a pair of handcuffs. The search did not uncover a weapon of any type, consistent with C. S.'s statement, or any of C. S.'s clothing.
¶ 7. Winding does not contest having engaged in a homosexual act with C. S., but rather, he maintains that the two engaged in the homosexual act willingly. Winding voluntarily wrote out a statement in which he contends that he had sex with C.S. after paying C.S. $10. Winding's statement further contends that, after payment, C.S. got out of his car and got into another car.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT LACKED JURISDICTION AND VENUE TO PROSECUTE COUNT TWO OF THE INDICTMENT.

STANDARD OF REVIEW
¶ 8. The determination of whether jurisdiction over a particular matter is proper is a question of law; therefore, this Court must apply a de novo standard of review to this issue. Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 841 (¶ 38) (Miss.2003) (quoting Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1204-05 (¶ 5) (Miss.1998)).

DISCUSSION
¶ 9. Winding first contends that count two of the indictment, which charges him with sexual battery, was improperly brought in Adams County, rather than in Wilkinson County. Winding argues that the evidence supporting the charge of sexual battery demonstrated that the sexual *166 act between Winding and C.S. took place in Wilkinson County. Therefore, Winding argues, Adams County is without jurisdiction to try the charge of sexual battery.
¶ 10. The record before us is clear that the kidnaping occurred in Adams County, as it is undisputed that C.S. got into Winding's car at a high school parking lot, located in Natchez. Further, it is clear that the sexual encounter between Winding and C.S. occurred in Wilkinson County. The record demonstrates that such a finding is fully supported by the evidence which was presented at trial, as C.S. led detectives to the area where the encounter took place. The location to which C.S. led the detectives was located in Wilkinson County, close to the border of Adams County. At this location, the detectives found C. S.'s false teeth and a used condom.
¶ 11. The record before this Court is clear that the sexual act between Winding and C.S. occurred in Wilkinson County, and it is undisputed that C.S. got into Winding's vehicle from a parking lot in Adams County. What is in issue is whether C.S. got into the vehicle voluntarily and whether the sexual act between he and Winding was voluntary. Such a determination is an issue of fact and is therefore within the province of the jury. Moran v. State, 822 So.2d 1074, 1076 (¶ 3) (Miss.Ct. App.2002). As the jury made the determination that Winding was guilty of kidnaping C.S. from Adams County and sexually assaulting C.S. in Wilkinson County, we must accept this determination and analyze the case sub judice accordingly.
¶ 12. It is well established in our jurisprudence that when two crimes have occurred as one continual event in whole or in part in different counties, jurisdiction is proper in the county in which prosecution is first begun. Stubbs v. State, 845 So.2d 656, 671 (¶ 59) (Miss.2003) (quoting Mississippi Code Annotated § 99-11-19 (Rev.2000)). As was stated by the Mississippi Supreme Court, "[u]nquestionably, the State of Alabama could have indicted and tried appellant for murder in that state. It did not do so. The first indictment returned against appellant was in Hinds County, Mississippi, from which county Mrs. Lowe admittedly was kidnaped." Pruett v. State, 431 So.2d 1101, 1104 (Miss.1983). This same reasoning applies to the case sub judice. It is apparent that Wilkinson County could have indicted and tried Winding for sexual battery, but it did not do so. Rather, the indictment against Winding originated in Adams County, the county from which C.S. was kidnaped.
¶ 13. As such, the Adams County Circuit Court did possess jurisdiction over the matter and, therefore, this issue is without merit.

II. WHETHER WINDING RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

STANDARD OF REVIEW
¶ 14. "Our standard of review for a claim of ineffective assistance of counsel is a two-part test: the defendant must prove, under the totality of the circumstances, that (1) his attorney's performance was deficient and (2) the deficiency deprived the defendant of a fair trial." Jackson v. State, 815 So.2d 1196, 1200 (¶ 8) (Miss.2002) (citing Hiter v. State, 660 So.2d 961, 965 (Miss.1995)). Such review is highly deferential to the attorney's conduct, with a presumption that such fell within the wide range of reasonable professional assistance. Id.

DISCUSSION
¶ 15. Winding's next contention is that he received ineffective assistance of counsel, as he feels that the jury was *167 improperly instructed on the issue of whether or not the sexual act between he and C.S. was consensual. Winding contends that the jury was improperly instructed, and therefore his counsel's performance was deficient, because the jury did not receive an instruction explicitly stating that consent acts as a defense to the crime of sexual battery.
¶ 16. Winding's argument fails, because the jury was instructed on consent in jury instruction nine, State's instruction three, which states as follows:
James C. Winding, has been charged in Count 2 of the indictment with sexual battery.
If you find from the evidence in this case beyond a reasonable doubt that:
1. James C. Winding on or about September 28, 2002, during a continuing series of events which began in Adams County, Mississippi;
2. knowingly engaged in sexual penetration with C. S.,
3. without the consent of C. S.;
then you should find the defendant guilty as charged.
If the prosecution has failed to prove any one or more of the above elements beyond a reasonable doubt, then you should find James C. Winding not guilty as to Count 2-sexual battery.
(emphasis added).
¶ 17. As illustrated by this instruction, a prerequisite to finding Winding guilty of sexual battery was to determine that the sexual act between Winding and C.S. was without C. S.'s consent. As the jury determined that Winding was indeed guilty of sexual battery, inherently the jury had to determine that the sexual act took place without C. S.'s consent. Therefore, this issue is without merit.

III. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

STANDARD OF REVIEW
¶ 18. This Court's standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court will only disturb a verdict which is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Reversal is only proper when this Court is convinced that the circuit court has abused its discretion in failing to grant a new trial. Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict
Cousar v. State, 855 So.2d 993, 998 (¶ 15) (Miss.2003) (citations omitted).

DISCUSSION
¶ 19. Winding next contends that the evidence presented at trial was insufficient to support the jury's verdict. Winding specifically points out contradictions in the testimony of C. S., stating that such inconsistencies cannot support the verdict. Such inconsistencies, Winding contends, consist of testimony that Winding drove a Mustang, but rather, Winding drove a Mazda. C.S. testified that Winding had a brown gun, a black gun, and a machine gun, though no firearm was found in Winding's vehicle. Further, C.S. testified that Winding threw him on the ground, tore his clothes off and raped him, but later said that Winding first put a sheet and pillow on the ground prior to the act. C.S. also testified that Winding tore out his false teeth and threw them into the woods *168 though they were found in close proximity to the used condom. Lastly, C.S. testified that Winding did not use a condom, though one was found at the scene.
¶ 20. Though there are inconsistencies in the testimony of C. S., Winding fails to acknowledge in his argument that C.S. suffers from a mental disability, which gives some explanation for the discrepancies of his testimony. Nevertheless, it is not the role of this Court to assign weight to an individual's testimony. Rather, it is well established in Mississippi law that the jury acts as fact-finder and must determine the credibility of the witnesses, and the proper weight to be assigned to their testimony. Hogan v. State, 854 So.2d 497, 502 (¶ 17) (Miss.Ct.App.2003) (quoting Jackson v. State, 614 So.2d 965, 972 (Miss. 1993)). From the jury's verdict, it is evident that greater weight and credibility was assigned C. S.'s testimony, than to Winding's alternative explanations.
¶ 21. The evidence which supports the jury's verdict includes C. S.'s testimony that Winding picked him up near Natchez High School in Adams County and then drove him to Wilkinson County against his will. Further, C.S. testified that Winding pushed out his false teeth and "throwed them on the grass," and that Winding threw C.S. on the ground, removed C. S.'s clothing, and sexually assaulted him. C.S. discussed Winding placing a pool stick to C. S.'s neck while in the car, and instructing him not to scream. Further, C.S. was able to describe a dent which was present on Winding's vehicle and explained that Winding told him that he was a police officer. The physical evidence supports C.S.'s testimony.
¶ 22. Upon conducting a search of Winding's vehicle, police officers discovered a walking stick, pillows, clothing, and handcuffs. Further, officers noticed and photographed the dent in the side of the vehicle which was described by C.S.C.S. was able to lead investigators to the scene of the assault, where they found a condom, C. S.'s dentures, and matted grass. Further, C.S. was able to make a positive pretrial photographic identification, as well as a positive in-court identification of Winding as the individual who abducted and sexually assaulted him.
¶ 23. With the amount of evidence presented which corroborates C. S.'s recollection of the night of September 28, 2002, it cannot be stated that the jury's verdict was against the overwhelming weight of the evidence. The jury's ruling was fully supported by the evidence presented and the testimony given by C.S. Therefore, this issue is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A PAIR OF HANDCUFFS FOUND IN WINDING'S CAR.

STANDARD OF REVIEW
"The standard of review regarding the admission or exclusion of evidence is abuse of discretion." Ware v. Entergy Mississippi, Inc., 887 So.2d 763, 766 (¶ 6) (Miss.2003) (citing Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997)).

DISCUSSION
¶ 24. Winding lastly argues that a pair of handcuffs which were found in his vehicle were improperly admitted into evidence. First, Winding argues that the handcuffs should have been excluded as irrelevant evidence, pursuant to Mississippi Rule of Evidence 401. Rule 401, Definition of "Relevant Evidence," states as follows: "`Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action *169 more probable or less probable than it would be without the evidence."
¶ 25. During the direct examination of C. S., the following colloquy took place which explains the trial judge's ruling which allowed admission of the handcuffs found in Winding's vehicle.
Q. [BY PROSECUTOR] After he got you in the car, what did he tell you he was?
A. He told me he was a police. He said he a police.
Q. A policeman?
A. Yeah. He was a police. He said he was a police.
Q. Did he have anything with him to make you think he might have been a police?
A. He said, he tole (sic) me he had a gun first. He pulled a gun on me. Now he had a pool stick and put it around my neck.
Q. A stick?
A. Yeah.
Q. Like a pool stick?
A. Yeah.
Q. What did he do with the pool stick?
A. He put it under the collar.
Q. He did what?
A. Put it under the collar.
Q. I mean, what did he do with it around your neck?
A. He told me don't holler or say nothing. He told me not to holler or say nothing.
¶ 26. Further, during direct examination of investigator Craig Godbold, the following testimony took place:
Q. [BY PROSECUTOR] Was there any allegations of Winding being a police officer?
A.C.S. stated that the suspect identified himself as being a police officer. When he picked him up, C.S. stated that he believed the suspect to be a police officer. I asked C. S., "Why was he a police officer?" He said, "Because he said he was a police officer and he had a gun."
Q. And a pair of handcuffs?
A. And we found a pair of handcuffs, yes, sir.
Q. And did you find anything else in the car?
A. Inside the car there was several empty bottles of drinking water. There were several full bottles and some empty bottles.
Q. How about pillows? We've heard about pillows.
A. Also inside the trunk we found two black pillows as being described by C.S. at the time of the assault. C.S. had stated at the time of the assault and on the road that the suspect had given him a pillow, a black pillow and told him to bend over the pillow. C.S. said he started crying and the suspect took the pillow and just threw it back in the car and proceeded with the assault. Inside the car we recovered two black pillows as described by C.S. before we ever found the car. We found several different items in the car. These items that we believe that could have been related to the crime.
Q. Such as?
A. Such as like I said the handcuffs 
Q. Oh, what you've shown us?
A. What we've shown, yes, sir.
MR. ROSENBLATT: Your Honor, at this time I move to introduce these items into evidence. If the court would want to entertain objections separately.
THE COURT: Yes. One at a time.
MR. ROSENBLATT: The silver handcuffs.

*170 MR. COLBERT: Object as to relevancy, Your Honor. I don't think the victim ever testified as to seeing any silver handcuffs.
MR. ROSENBLATT: Your Honor, we have a case in which someone was confined against his will and had odd sexual acts done to him. We think the handcuffs, for what they are worth, go to show the propensity toward that kind of activity. I don't think the average person carries handcuffs around. I think they go to show the state of mind of someone that's interested in finding people 
MR. COLBERT: Your Honor, there has been absolutely no testimony, no evidence at all to say that the handcuffs were involved in any crime. I know a girl in high school that carried handcuffs in her car.
THE COURT: She must have been very popular.
MR. COLBERT: I don't see the relevance, Your Honor.
THE COURT: The Court is going to allow the handcuffs to come in because C.S. testified that he was told by his assailant that he was a police officer and handcuffs would be something that a police [officer] would have.
MR. COLBERT: Same objection as to relevance, Your Honor.
THE COURT: I overrule your objection. I'll allow them to come in.
¶ 27. As illustrated by both C. S.'s and Godbold's testimony, the relevance of the handcuffs to the crime was that Winding led C.S. to believe that he was a police officer. The discovery of handcuffs in Winding's vehicle lends support to C. S.'s contention that Winding was posing as a police officer, that Winding's modus operandi in this type of crime was to take individuals by force acting as a police officer. "A trial court has great latitude in admission or exclusion of evidence where the question is one of materiality or relevancy, and its decision should only be reversed where this discretion is abused." Blocker v. State, 809 So.2d 640, 645 (¶ 20) (Miss.2002) (citing Eskridge v. State, 765 So.2d 508, 510 (¶ 7) (Miss.2000)). The definition of relevant evidence is broad, and admissibility of such is favored. "If the evidence has any probative value at all, the rule favors its admission." M.R.E. 401 cmt. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." Favre v. State, 877 So.2d 554, 556 (¶ 6) (Miss.Ct.App.2004) (quoting Hughes v. State, 735 So.2d 238, 270 (¶ 134) (Miss. 1999) (citations omitted)). In the case sub judice, the handcuffs which were admitted into evidence would constitute police paraphernalia, such evidence goes to support the testimony of both C.S. and Godbold and, as such, is relevant. Therefore, Winding's first contention under this argument is without merit.
¶ 28. Next, Winding contends that the admission of the handcuffs into evidence violated Mississippi Rule of Evidence 403. Rule 403, "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time," states as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Winding made no reference to Rule 403 when objecting to the admission of the handcuffs into evidence and has, therefore, waived this issue for appeal. Smith v. State, 729 So.2d 1191, 1210 (¶ 87) (Miss. *171 1998). Nevertheless, this argument is without merit as well.
¶ 29. Winding advances essentially the same argument for exclusion of the evidence under Mississippi Rule of Evidence 401, stating that the possession of handcuffs is not illegal and is not probative of the crimes with which he was charged. As discussed above, admission of the handcuffs was proper, since such evidence tends to lend credence to the testimony of C.S. and Godbold, that Winding masqueraded as a police officer in order to carry out the crimes. Therefore, this issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF COUNT I KIDNAPING AND SENTENCE OF THIRTY-YEARS; CONVICTION OF COUNT II SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS, WITH SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.