MYERS, J.,
 

 for the Court:
 

 ¶ 1. A Lincoln County jury convicted Jackie Williams of aggravated assault in the shooting of his friend, Dontrey Walker, during an argument. The circuit court sentenced Williams to twenty years in the custody of the Mississippi Department of Corrections and ordered him to pay a $10,000 fine and restitution for the victim’s medical bills. Williams’s term of imprisonment was ordered to be served consecutively to another sentence in an unrelated matter.
 

 ¶ 2. On appeal, Williams contends that the jury’s verdict is against the overwhelming weight of the evidence, which he argues supports his theory that the shooting was in self-defense. We find that the record presents only a conflict in the evidence, so we affirm.
 

 FACTS
 

 ¶ 3. Williams and Walker were good friends. Both acknowledged that over the year before the shooting, they had spent nearly every day together. At the time of. trial, Walker was nineteen years of age, and Williams was twenty-seven. Both were residents of Brookhaven, Mississippi.
 

 ¶4. Walker and Williams’s friendship was strained by an incident at a local convenience store. What happened is not clear from the record, but it was generally agreed that Walker had a confrontation with a group of men. Williams was there but had not joined in on Walker’s side.
 

 ¶ 5. According to Walker, on the night of May 27, 2009, the day after the incident at the convenience store, he and Williams were at Walker’s grandmother’s house, where Walker resided. Williams was angry because someone had told him that Walker planned to rob him in retaliation. They began arguing, and Anthony “Ant” Watts, Walker’s cousin, told them to leave
 
 *1031
 
 because they were disturbing Watts’s mother, who also lived there. Walker attempted to leave, but Williams engaged him in a way that made Walker believe he wanted to work out their differences. The two walked to an adjacent lot, which was vacant, where they resumed arguing. At some point, Williams became silent and placed his hand in his pocket in a manner that caused Walker to ask, “Are you gonna shoot me, or what?” Walker testified that he knew Williams carried a 9mm pistol. Williams remained silent and maintained a hostile posture before backing off a short distance and firing. Walker was hit twice, in the face and chest; he turned and fled toward his grandmother’s house.
 

 ¶ 6. Williams testified in his own defense, and his account was different than Walker’s. Williams claimed that he had been outside Walker’s grandmother’s home with Watts, when Walker approached.
 
 [1]
 
 Walker drew a 9mm pistol, which Williams knew him to carry, and robbed Williams of $700 he had recently received as a tax refund. Walker then turned and continued down the street. Williams pursued and physically engaged Walker when he attempted to draw the gun again. Williams was able to take the gun and shoot Walker with it, which caused Walker to disengage and flee. Williams then went home.
 

 ¶7. Several other witnesses also testified. Watts more or less corroborated Walker’s account of the lead up to the shooting; he confirmed that before the shooting, Walker and Williams had been in the home arguing and that he had asked them to leave. Watts also said that, immediately before the shooting, he was standing outside and saw Walker walking down the street with Williams following behind him. Shots were fired, which caused Watts to duck behind a wall. Watts stated that he did not see the shooting itself, only what occurred a short time before it happened.
 

 ¶ 8. Captain Bobby Bell of the Brookha-ven Police Department testified that he was near the scene of the shooting when he heard four gunshots in rapid succession. Captain Bell was able to identify the street where the shooting had occurred; he called for assistance and went there himself, where he found Walker sitting in a chair near the sidewalk, covered in blood. Walker had been shot in the mouth and the chest, but he was able to tell Bell that Williams had shot him. That night, Bell called Williams on his cell phone and told Williams that he needed to speak with him. Williams said he would get back with Bell and ended the call. Williams then turned off his cell phone, and Captain Bell was unable to make contact with him again. Williams was ultimately apprehended about two months later in Franklinton, Louisiana.
 

 ¶ 9. At the scene of the shooting, the authorities found four shell casings. Three were Winchester brand, from 9mm Luger cartridges, and the other was from a .380 automatic. The presence of the .380 shell casing was never explained, nor were the weapon or weapons connected to the shooting recovered.
 

 DISCUSSION
 

 ¶ 10. On appeal, Williams contends that his conviction is against the overwhelming weight of the evidence. The Mississippi Supreme Court has detailed how our appellate courts must review the
 
 *1032
 
 weight of the evidence supporting a jury’s verdict, stating:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice-However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather ... [the reviewing] court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005) (internal citations and quotations omitted). The supreme court also warned that a challenge to the weight of the evidence “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.”
 
 Id.
 
 (quoting
 
 Amiker v. Drugs For Less, Inc.,
 
 796 So.2d 942, 947 (¶ 18) (Miss.2000)).
 

 ¶ 11. Williams’s argument on appeal centers around his contention that the shooting resulted from a physical fight between the two men. Williams asserts that Walker admitted he had attacked Williams before being shot, but the record does not support Williams’s claim. Instead, Walker testified that he had attempted to distract Williams so he could “knock him down” and “get away,” but only after Williams had made a threatening gesture by placing his hand in a pocket. Walker did not say what he did to distract Williams, but he was clear that the attempt failed and that there was no physical contact between the two before Williams shot him. Walker was explicitly asked on both direct and cross-examination whether the argument became physical and whether he did anything to Williams before the shooting— each time Walker denied that he had.
 

 ¶ 12. Of course, the fact that the two men were arguing before the shooting does not make it self-defense. But even if the jury had believed the two were physically fighting before the shooting, the reasonableness of the use of deadly force by Williams would remain a jury question. As this Court stated in
 
 Carter v. State, 858
 
 So.2d 212, 215 (¶¶ 7-8) (Miss.Ct.App.2003):
 

 Self-defense, in order to constitute a successful defense to a criminal prosecution of this nature [manslaughter], requires that the defendant act in response to an urgent actual threat or on a reasonable belief that such threat is actual and imminent.
 
 Wadford v. State,
 
 385 So.2d 951, 955 (Miss.1980). Because the assessments of the level and imminence of the threat to the defendant’s physical well-being and the appropriateness of the defendant’s level of response to the perceived danger require interpretation and analysis of the peculiar set of facts presented in a particular case, it is well settled that the reasonableness of the defendant’s actions is normally a matter for the jury sitting as finders of fact.
 
 Meshell v. State,
 
 506 So.2d 989, 991-92 (Miss.1987). While it may be true, as an abstract proposition, that there could be a case where the evidence of the gravity of the threat and the reasonableness of the defendant’s reaction to it was so persuasive that no reasonable juror could disregard that evidence, we do not conclude this to be that case.
 
 *1033
 
 Rather, the case appears to have been vigorously tried on the issue of self-defense, the jury was properly instructed on the law, and, insofar as the record shows, resolved this issue by concluding that Carter, beyond any reasonable doubt, was not acting in necessary self-defense when he purposely fired three gunshots at close range into his victim, causing his death.
 

 ¶ 13. That being said, we find nothing but a conflict in the evidence as to the events leading up to the shooting. The jury simply did not accept Williams’s account, and that was its decision to make: “The jury is the sole judge of the weight of the evidence and the credibility of the witnesses.”
 
 Nix v. State,
 
 8 So.3d 141, 146 (¶ 26) (Miss.2009) (quoting
 
 Mohr v. State,
 
 584 So.2d 426, 431 (Miss.1991)). Conflicts in the evidence are for the jury to resolve.
 
 Whittington v. State,
 
 377 So.2d 927, 929 (Miss.1979). Consequently, we cannot say that the jury’s verdict is against the overwhelming weight of the evidence. This issue is without merit.
 

 ¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $10,000 FINE AND RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
 

 LEE, C. J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. RUSSELL, J., NOT PARTICIPATING.
 

 [1]
 

 . It is not clear from Williams’s testimony whether Watts was present when Walker approached.