# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00249-COA

SANCHEZ DUNCAN A/K/A SANCHEZ D.                           APPELLANT
DUNCAN A/K/A SANCHEZ DEJUAN DUNCAN

v.

STATE OF MISSISSIPPI                                       APPELLEE

DATE OF JUDGMENT:          12/09/2016
TRIAL JUDGE:               HON. JON MARK WEATHERS
COURT FROM WHICH APPEALED: FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    OFFICE OF STATE PUBLIC DEFENDER
                           BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: BILLY L. GORE
DISTRICT ATTORNEY:         PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED: 03/20/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.

### GRIFFIS, P.J., FOR THE COURT:

¶1.     Sanchez Duncan appeals his convictions for possession of methamphetamine and possession of a weapon by a convicted felon. Duncan's appellate counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), and certified that the record presented no arguable issues for appellate review. Duncan subsequently filed a pro se brief.

¶2.     We have reviewed the record and find no arguable issues that necessitate supplemental briefing. After reviewing the issues that Duncan raises in his pro se brief, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In May 2015, a confidential source, later identified as a neighbor or neighbors, contacted the Hattiesburg Police Department regarding activity at a residence located at 505 Rebecca Avenue. Richard Hill, his girlfriend Janie Sistrunk, and Sistrunk's brother, Jeremy Morgan, lived at the residence. As a result of numerous complaints, active surveillance of the residence began in early July 2015.

¶4. On August 6, 2015, Sistrunk contacted Duncan and asked him to come over. According to Sistrunk, she and Duncan were "buddies," and Duncan needed her to unlock and activate some iPhones. In exchange for unlocking and activating the cell phones, Sistrunk would receive methamphetamine.

¶5. Sistrunk testified that when Duncan arrived, he was carrying a backpack. Sistrunk explained that she previously had given Duncan the backpack, so she knew "for a fact that it was his backpack." While Sistrunk worked on the cell phones, she and Duncan smoked methamphetamine in her bedroom.

¶6. At the time Duncan arrived, Sergeant Joseph Kennedy was surveilling the house. He called for assistance. Lieutenant Daniel Miller and Officer Jarrod Smith responded. They then assisted Sergeant Kennedy with a "knock and talk." Hill answered the door. Duncan and Sistrunk then walked in view of the door. Duncan yelled, "Oh, s**t, police" and fled to Sistrunk's bedroom. For safety purposes, Sergeant Kennedy and Lieutenant Miller entered and secured the residence. Duncan, Sistrunk, Hill, and Morgan were handcuffed and taken outside.

¶7. Hill signed a consent form to search the residence. Sergeant Kennedy and Lieutenant Miller then reentered the residence wherein they found "several bags of methamphetamine, a gun[,] . . . and pills, a couple of pills that [were] in the bag." The "bag" was a green and black backpack found on Sistrunk's bed. Inside of the backpack was an oval white pill, four bags of a crystalized substance, and a nine-millimeter handgun. Additionally, the officers recovered from Duncan's person a bag containing a crystalized substance as well as an oval pill and a bullet. The oval pill found on Duncan was the same type of pill found in the backpack. Moreover, the bullet found on Duncan was the same brand and caliber that was loaded in the handgun located in the backpack.

¶8. Sistrunk testified that the green and black backpack belonged to Duncan and was the same backpack that she had given Duncan "prior to [the] bust." Sistrunk further testified that after they were removed from the residence and taken outside, Duncan mouthed to her that there was a gun in the backpack.

¶9. The crystalized substances subsequently were tested by a forensic scientist with the Mississippi Crime Laboratory and determined to be methamphetamine. Specifically, 0.085 grams of methamphetamine were found on Duncan, and 1.402 grams of methamphetamine were found in the backpack.

¶10. Duncan was indicted on the charges of Count I, possession of 0.1 gram or more, but less than 2 grams of methamphetamine, and Count II, possession of a weapon by a convicted felon. Duncan's indictment subsequently was amended as to Count I to charge him as a second or subsequent offender pursuant to Mississippi Code Annotated section 41-29-147

3

(Rev. 2013).

¶11.    Sistrunk also was indicted.  She subsequently entered a guilty plea to a felony charge related to the incident.[1]  As part of her plea, Sistrunk agreed to provide truthful testimony at Duncan's trial.

¶12.    Following a jury trial, Duncan was found guilty on both counts and sentenced to serve six years in the custody of the Mississippi Department of Corrections on Count I, and ten years, with five years suspended, on Count II, with the sentences to run consecutively. Additionally, Duncan was ordered to pay a $2,500 fine, a $200 assessment to the Mississippi Crime Victim Compensation Program, restitution in the amount of $250 to the Forrest County Public Defender Fund, $200 to the 12th Circuit Court Narcotics Enforcement Team, restitution in the amount of $2,048.48 to the Forrest County Jury Account, and all court costs.

¶13.    Duncan subsequently filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial, which was denied.  Duncan timely appealed.

ANALYSIS

¶14.    In *Lindsey*, the Mississippi Supreme Court implemented the following procedure for cases where appellate counsel does not believe any arguable issues exist for appellate review:

> (1)  Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8).]
>
> (2)  As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances

---

[1] Although the judgment and/or sentencing order are not included in the record, it appears Sistrunk pled guilty to possession of methamphetamine.

surrounding [the] arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

(3)  Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.

(4)  Should the defendant then raise any arguable issue[s] or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

(5)  Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

*Lindsey*, 939 So. 2d at 748 (¶18) (internal citations omitted).

¶15.    Here, Duncan's counsel filed a brief in compliance with Rule 28 and asserted that he had "diligently searched the procedural and factual history . . . and scoured the record" but was unable to find any arguable issues that he could present in good faith for appellate review.

¶16.    Duncan's counsel sent a copy of the brief to Duncan and informed him that although he found no arguable issues in the record, Duncan had the right to file a pro se brief.  Duncan subsequently filed a pro se brief challenging: (1) the credibility of the State's witnesses and (2) the sufficiency of the evidence.  Duncan further claims he should have been charged with constructive possession.

I.    *Credibility of the State's Witnesses*

¶17.    Duncan first argues that Sistrunk, Sergeant Kennedy, and Lieutenant Miller all

5

provided inconsistent statements. He reasons that they were not credible. Witness credibility is for the jury to determine. *Winding v. State*, 908 So. 2d 163, 168 (¶20) (Miss. Ct. App. 2005). "[T]he jury acts as fact-finder and must determine the credibility of the witnesses, and the proper weight to be assigned to their testimony." *Id*. Any conflicts in the evidence are for the jury to resolve. *Williams v. State*, 64 So. 3d 1029, 1033 (¶13) (Miss. Ct. App. 2011) (citation omitted).

¶18. Here, the record shows that the jury heard from all witnesses and was able to evaluate their testimony, determine their credibility, and resolve any conflicts in the evidence. Accordingly, this issue is without merit.

## II. Sufficiency of the Evidence

¶19. Duncan next argues that "the State failed to provide sufficient evidence to support the elements of Count I and Count II." In considering whether the evidence is sufficient to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 35 So. 3d 480, 485 (¶16) (Miss. 2010) (citations omitted). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient." *Id*.

6

¶20.   Duncan was convicted of possessing 0.1 gram or more, but less than 2 grams of methamphetamine, in violation of Mississippi Code Annotated section 41-29-139(c)(1)(B) (Supp. 2014).  "The two essential elements of drug possession are (1) knowledge and (2) possession." *O'Donnell v. State*, 173 So. 3d 907, 916 (¶22) (Miss. Ct. App. 2015) (citing Miss. Code Ann. § 41-29-139(c)).  "To support a conviction for possession of a controlled substance, there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Id*. (citation omitted).  "Possession of a controlled substance may be actual or constructive." *Id.* at 917 (¶22) (citation omitted).  "To establish constructive possession, the drug merely has to be found near the defendant in a place over which the defendant exercises dominion or control." *Id.* (citation and internal quotation marks omitted).

¶21.   Duncan claims the State failed to show that he exercised dominion and control over the backpack in which the methamphetamine was found.  We disagree.

¶22.   Sistrunk testified that she gave the backpack to Duncan prior to August 6, 2015, and "knew for a fact that it was his backpack."  Sistrunk further testified that when Duncan arrived at the house on August 6, 2015, he was carrying the backpack.  Moreover, Sistrunk testified that in exchange for unlocking and activating the cell phones, she received methamphetamine.

¶23.   Additionally, Sistrunk testified that she and Duncan worked on the cell phones and smoked methamphetamine in her bedroom.  When Sergeant Kennedy performed his "knock

7

and talk," he saw Duncan run to the bedroom. Once the house was secure, Sergeant Kennedy searched the premises and found the backpack in the bedroom where Duncan previously was located.

¶24. Moreover, further testimony showed that an oval white pill and methamphetamine were found on Duncan's person. The same type of pill and substance also was found in the backpack. Accordingly, sufficient evidence existed for a rational juror to find that Duncan exercised dominion and control over the backpack and possessed methamphetamine.

¶25. Duncan also was convicted of possession of a weapon by a convicted felon, in violation of Mississippi Code Annotated section 97-37-5 (Rev. 2014). The State had to prove that: "(1) the defendant was in possession of a firearm, and (2) the defendant had previously been convicted of a felony crime." *Gunn v. State*, 174 So. 3d 848, 866 (¶63) (Miss. Ct. App. 2014) (citing Miss. Code Ann. § 97-37-5). "The possession element may be shown by proof that the defendant actually or constructively possessed the firearm." *Short v. State*, 929 So. 2d 420, 427 (¶21) (Miss. Ct. App. 2006).

¶26. Duncan admits he previously was convicted of a felony but claims there was insufficient evidence to show that he possessed the handgun found in the backpack. We disagree.

¶27. Sistrunk testified that after she and Duncan were removed from the residence and taken outside, Duncan mouthed to her that there was a gun in the backpack. Moreover, a bullet was found on Duncan. It was the same brand and caliber that was loaded in the handgun located in the backpack.

¶28. Overall, considering the evidence in the light most favorable to the State, there was sufficient evidence to support Duncan's convictions for possession of methamphetamine and possession of a weapon by a convicted felon. Thus, this issue is without merit.

*III. Constructive Possession*

¶29. Finally, Duncan argues that he "should have been charged with constructive possession." Duncan was charged with possession of methamphetamine and possession of a weapon by a convicted felon. As previously noted, possession may be actual or constructive.

¶30. The record shows the jury was instructed on constructive possession. Specifically, State's instructions S-1, S-2, and S-3 all defined and/or explained constructive possession. Thus, we find this issue is meritless.

CONCLUSION

¶31. The issues raised in Duncan's pro se brief are without merit, and we find no issues that call for additional briefing. Accordingly, we affirm the judgment of the Forrest County Circuit Court.

¶32. **AFFIRMED**.

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

9