# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2025-KA-00202-SCT

*MARK EVERETT McDANIEL a/k/a MARK*
*McDANIEL a/k/a MARK E. McDANIEL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2024 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM, SR. |
| TRIAL COURT ATTORNEYS: | ROSHARWIN LEMOYNE WILLIAMS |
| | JEFFREY DOUGLAS ODOM |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | MATTHEW LOUIS BARTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/19/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND BRANNING, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Mark Everett McDaniel appeals his second-degree-murder conviction and raises three issues. First, McDaniel claims ineffective assistance of trial counsel for failure to request an accidental homicide instruction. Second, McDaniel claims a jury instruction on deliberate design prejudiced him. Third, McDaniel claims that his conviction was contrary to the overwhelming weight of the evidence. This Court finds each of the aforementioned issues

to be without merit and affirms McDaniel's conviction.

## FACTS AND PROCEDURAL HISTORY

¶2. On the evening of December 16, 2022, Devin Davis threw a party at his home near Walls, Mississippi, in DeSoto County. McDaniel attended this party but became heavily intoxicated and threw up behind the couch inside the house. McDaniel also went into the bathroom with another guest; the two stayed in the bathroom a long time and damaged it. Davis became angry about the damage to the bathroom, confronted McDaniel later that night, and punched him. McDaniel did not retaliate then; he went to sit in his car, and several people told him to leave.

¶3. Different witnesses provided different accounts of the events that followed. Larenz Jones testified that he saw John Williams, another guest, go with a group of people to McDaniel's car and tell him to leave. Jones testified that a physical altercation broke out between McDaniel and Williams, and Williams struck McDaniel. Then, Davis and Christian Saulsberry, the victim, ran toward McDaniel's car. At this point, McDaniel fired a shot.

¶4. Chelsey Allen, Williams's girlfriend, testified to a somewhat different version of events. She said that Saulsberry was one of the people who went to McDaniel's car and told him to leave. She claimed that Williams opened McDaniel's car door, and as the people around the car stepped back, shots rang out. Allen also testified that neither Williams nor anyone else hit McDaniel before she heard the gunshots.

¶5. Williams testified that he and Saulsberry approached McDaniel's car with a group of

2

people to tell him to leave. Williams opened the car door and tried to grab McDaniel. Williams testified that he did not strike McDaniel. Williams then said he shut the door before the shooting started.

¶6. Davis testified as well and claimed that he saw McDaniel park his car with the front end facing the road. Davis approached McDaniel's car but did not reach the vehicle because he fell down. Davis stated that he saw Williams approach the car, open the driver-side door, and that an altercation between Williams and McDaniel occurred. Davis then heard gunshots while still on the ground.

¶7. Fantasia Conner, a witness called by the defense who was sitting in the car with McDaniel, described the events as follows: Davis got mad about the damage to the bathroom, Davis hit McDaniel, an altercation later ensued during which several people gathered around McDaniel's car in an attempt to get him to leave, and then, McDaniel started shooting. Conner also claimed, however, that Saulsberry and the others threatened McDaniel in the altercation before he fired his weapon.

¶8. According to Davis's testimony, around 3:00 a.m. on December 17, 2022, the altercation at McDaniel's car reached a crescendo. Gunfire struck Saulsberry, and he later died from his injuries.

¶9. After the incident, McDaniel spoke with both Davis and Conner in separate phone calls. In the phone call with Davis, which the jury heard, McDaniel stated that he did not want to fight Davis because he did not want to embarrass Davis in front of his mother. He

3

admitted to firing his weapon at the group of people. In the phone call with Conner, she testified that McDaniel sounded confused as to what transpired when she spoke with him on the phone and that McDaniel was going to claim self-defense as his defense.[1]

¶10. Saulsberry suffered two fatal gunshot wounds. One projectile was removed from Saulsberry's body during the autopsy, and one projectile was found in the body bag. Police also found two spent shell casings in McDaniel's car and one at the end of Davis's driveway. Police obtained the gun used in the shooting. A firearms expert later matched the projectile found in Saulsberry's body as well as the three spent shell casings to that gun.

¶11. A grand jury indicted McDaniel for murder on July 14, 2023. On August 27, 2024, McDaniel's first trial resulted in a mistrial due to a hung jury. At McDaniel's second trial on November 21, 2024, the jury convicted him of second-degree murder, and the court sentenced him to a term of twenty years' incarceration in the Mississippi Department of Corrections with a term of ten years' post-release supervision. McDaniel now appeals, raising three arguments: (1) ineffective assistance of counsel; (2) prejudice as a result of a deliberate-design jury instruction; and (3) that his conviction was against the overwhelming weight of the evidence.

## ANALYSIS

I. *Whether McDaniel's counsel was ineffective.*

¶12. McDaniel argues that his trial counsel proved ineffective for failing to request an

___

[1] The phone call with Conner was not recorded and is not in the record.

4

excusable-homicide jury instruction. Mississippi Code Section 97-3-17 defines excusable homicide:

> The killing of any human being by the act, procurement, or omission of another shall be excusable:
>
> (a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;
>
> (b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;
>
> (c) When committed upon any sudden combat, without undue advantage being taken, and without dangerous weapon being used, and not done in a cruel or unusual manner.

Miss. Code Ann. § 97-3-17 (Rev. 2020). This Court finds that McDaniel's counsel did not provide ineffective assistance of counsel for failing to request an instruction under Section 97-3-17. Clearly, no evidence supported giving an excusable-homicide instruction, and the test for ineffective assistance of counsel was not met in this case.

¶13. Ineffective assistance of counsel constitutes "a question of law reviewed *de novo*[.]" *Taylor v. State*, 167 So. 3d 1143, 1146 (Miss. 2015). While ordinarily brought in post-conviction proceedings, this Court will consider an ineffective-assistance-of-counsel claim "on direct appeal only where '[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed.'" *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018) (quoting *Bell v.*

***State***, 202 So. 3d 1239, 1242 (Miss. 2016)). Both parties have stipulated that the record is adequate for review of this issue.

¶14. This Court reviews claims of ineffective assistance of counsel under two prongs: "[F]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." ***Taylor***, 167 So. 3d at 1146 (second alteration in original) (internal quotation marks omitted) (quoting ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)); *see also* ***Swinney***, 241 So. 3d at 613 (repeating ***Strickland***'s test for ineffective assistance of counsel). Furthermore, a strong presumption exists in favor of trial counsel:

> The Court strongly presumes that counsel's conduct falls within the wide range of reasonably professional assistance, and the challenged act or omission might be considered sound trial strategy. Thus, defense counsel is presumed competent, and even where professional error is proven, the Court must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

***Swinney***, 241 So. 3d at 613 (citations omitted) (citing ***Chamberlin v. State***, 55 So. 3d 1046, 1050 (Miss. 2010)). The petitioner carries the burden of "rebut[ting] the presumption by showing that counsel's performance did not meet the constitutional standard established in ***Strickland***." ***Ashford v. State***, 233 So. 3d 765, 779 (Miss. 2017) (citing ***Wilson v. State***, 194 So. 3d 855, 862 (Miss. 2016)).

¶15. McDaniel argues that Conner's testimony that McDaniel fired his weapon in response to an attack was the factual basis for an excusable-homicide instruction and that he would have received this instruction had his counsel requested one despite Conner's testimony that

6

he was going to plead self-defense. McDaniel further argues that the omission prejudiced him because trial counsel did not request an instruction on all defenses available to McDaniel.

¶16. This Court finds that McDaniel has not met the test for ineffective assistance of counsel. Not asking for an excusable-homicide instruction does not automatically show that counsel was deficient; trial counsel chose to a pursue a self-defense theory rather than excusable homicide, and trial counsel's pursuit of self-defense qualifies as "sound trial strategy." *Swinney*, 241 So. 3d at 613 (citing *Chamberlin*, 55 So. 3d at 1050). McDaniel does not overcome the presumption in favor of trial counsel, especially given that the facts of this case do not support an excusable-homicide instruction. Furthermore, even if this omission did prove deficient, McDaniel has presented no argument that "a reasonable probability" exists that "the proceedings would have been different" had he received the instruction. *Id.* (citing *Chamberlin*, 55 So. 3d at 1050). As such, this Court holds that this omission did not "prejudice[] the defense." *Strickland*, 466 U.S. at 687. Therefore, this Court finds that McDaniel did not receive ineffective assistance of counsel.

II.     *Whether McDaniel was prejudiced as a result of a deliberate-design jury instruction.*

¶17. McDaniel next argues that the deliberate-design jury instruction prejudiced his defense by interfering with his self-defense theory. McDaniel also argues that deliberate-design jury instructions are improper when a manslaughter instruction is also given. S-2, the deliberate-design jury instruction given, set forth:

7

> The Court instructs the jury that "deliberate design" as it is used in these instructions, means an intent to kill without authority of law, and not being legally justifiable, or legally excusable. "Deliberate" always indicates full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, or contemplate. "Deliberate design" to kill a person may be formed very quickly, and perhaps only moments before the act of killing the person. However, a "deliberate design" cannot be formed at the very moment of the fatal act.

McDaniel did not object to this instruction at trial, and as such, he seeks plain-error review. Although the trial court gave McDaniel a manslaughter instruction as well, this Court finds that McDaniel was not prejudiced by the deliberate-design instruction and that giving the manslaughter instruction, even if error, was harmless beyond a reasonable doubt.

¶18. Under circumstances in which "no contemporaneous objection is made at trial, a party must rely on the plain error rule to raise the assignment of error on appeal." *Flora v. State*, 925 So. 2d 797, 811 (Miss. 2006) (citing *Foster v. State*, 639 So. 2d 1263, 1289 (Miss. 1994)). The plain error rule has two requirements: "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." *Id.* (internal quotation marks omitted) (quoting *Williams v. State*, 794 So. 2d 181, 187 (Miss. 2001, *overruled on other grounds by Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008)). This Court only applies the plain error rule "when a defendant's substantive or fundamental rights are affected." *Id.* (quoting *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991)).

¶19. Regarding the jury instructions at issue, this Court has held that a deliberate-design instruction conflicts with a manslaughter instruction. *Catchings v. State*, 684 So. 2d 591, 595 (Miss. 1996); *see also Blanks v. State*, 542 So. 2d 222, 227 (Miss. 1989) (holding that "a

8

deliberate design cannot be formed at the very moment of the fatal act" and that this Court generally will reverse when the jury receives both instructions); ***Windham v. State***, 520 So. 2d 123, 126 (Miss. 1987) (holding that a deliberate-design instruction rules out manslaughter and that the two conflict). This Court has reasoned that the two instructions prove irreconcilable:

> While it is no doubt true that a deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent, it is a contradiction in terms to state that a "deliberate design" can be formed at the very moment of the fatal act. Moreover, it is possible for a deliberate design to exist and the slaying nevertheless by no greater than manslaughter. It can thus be seen that this special murder instruction granted the State rules out manslaughter, and is in hopeless conflict with the manslaughter instruction.

***Windham***, 520 So. 2d at 126 (citation omitted). The two instructions conflict because the deliberate-design instruction cancels out the manslaughter instruction; one can form intent due to heat of passion. *See **Blanks***, 542 So. 2d at 227. Moreover, in cases "[w]here deliberate design and manslaughter instructions are given, and 'where under the evidence the jury might reasonably have concluded that the defendant acted in the heat of passion, we will . . . ordinarily reverse.'" ***Catchings***, 684 So. 2d at 595 (second alteration in original) (quoting ***Blanks***, 542 So. 2d at 227).

¶20.    This Court, however, has ruled that an exception to this rule exists. In ***Nicolaou v. State***, this Court held that giving both instructions constituted harmless error when the "instructions on manslaughter . . . [are] not required under the evidence in [the] case." ***Nicolaou v. State***, 534 So. 2d 168, 173 (Miss. 1988). This Court reaffirmed this exception

9

in ***Catchings***: "Thus, whether the giving of the deliberate design instruction constitutes reversible error depends on whether the giving of the manslaughter instruction was warranted by the evidence in this case." ***Catchings***, 684 So. 2d at 595 (citing ***Blanks***, 542 So. 2d at 227; ***Nicolaou***, 534 So. 2d at 173).

¶21.    The deliberate-design jury instruction defined the term:

> The Court instructs the jury that "deliberate design" as it is used in these instructions, means an intent to kill without authority of law, and not being legally justifiable, or legally excusable. "Deliberate" always indicates full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, or contemplate. "Deliberate design" to kill a person may be formed very quickly, and perhaps only moments before the act of killing the person. However, a "deliberate design" cannot be formed at the very moment of the fatal act.

The manslaughter instruction given here reads as follows:

> The Court instructs the Jury that in the event the evidence fails to convince you beyond a reasonable doubt that the Defendant, MARK EVERETT McDANIEL, is guilty of the crime of First-Degree Murder or Second-Degree Murder, then you may consider whether the Defendant is guilty of the lesser-included offense of Manslaughter. The distinction between the crime of First-Degree Murder, Second-Degree Murder, and Manslaughter is the absence of malice and deliberate design to effect death and conduct evincing a depraved heart.
>
> Under Manslaughter, if you find beyond a reasonable doubt that:
>
> > (1)    On or about December 17, 2022, in DeSoto County, Mississippi,
> >
> > (2)    the Defendant, MARK EVERETT McDANIEL, did unlawfully, willfully, feloniously, without authority of law and not in necessary self-defense, without malice,
> >
> > (3)    in the heat of passion, but in a cruel and unusual manner or by the use of a dangerous weapon,

10

> > (4)    kill Christian Saulsberry, a human being, by shooting him with a firearm,

> then you shall find the Defendant, MARK EVERETT McDANIEL, guilty of Manslaughter.

> If the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Manslaughter.

This Court finds that giving both instructions constitutes harmless error because the manslaughter instruction was not warranted by the evidence.

¶22.    Like in *Blanks*, the evidence in this case did not support a manslaughter instruction. In *Blanks*, the defendant saw the victims damage a post on his house, causing him to enter a state of rage. *Blanks*, 542 So. 2d at 227. A car chase ensued in which the defendant pursued the victims for around fifteen minutes before he stopped his vehicle in front of theirs, loaded his gun, and opened fire. *Id.* This Court held that "[u]nder any interpretation, enough time elapsed—close to fifteen minutes—that the law charged Blanks to cool his temper and act responsibly." *Id.* Giving both instructions, thus, was harmless error because the facts did not support heat of passion. *Id.*

¶23.    Similarly, in this case, despite differing versions of the facts, the witnesses agreed that McDaniel went to his car after the first altercation with Davis and sat in his car for a period of time. Since a sufficient period of time then elapsed between the first and second altercation, McDaniel had time to cool his temper like the defendant in *Blanks*.[2] McDaniel's

---

[2] Pinning down the exact time of the first altercation is difficult. Jones testified that the first altercation happened around midnight, and Davis testified that the second altercation

11

choice not to respond when punched by Davis the first time also evidences that he was never in the heat of passion since he exercised control over his temper. He even admitted as much on the phone with Davis when he said he chose not to retaliate because he did not want to fight Davis in front of his mother, further showing that McDaniel retained control over his temper instead of responding in the heat of passion. As in *Blanks*, here, heat of passion could not exist: "There is no reasonable factual scenario under which the jury may reasonably have concluded . . . [McDaniel's] premeditated design to kill, if any, existed in his mind but for an instant before the fatal act." *Blanks*, 542 So. 2d at 227. Since McDaniel had plenty of time for his temper to cool, this Court holds that giving the manslaughter instruction constituted harmless error; the evidence did not support the manslaughter instruction.

¶24. Giving both the deliberate-design and manslaughter instructions constituted harmless error. The manslaughter instruction was not warranted by the evidence since McDaniel either had plenty of time to cool his temper. Therefore, giving both instructions did not "result[] in a manifest miscarriage of justice" and constituted harmless error. *Flora*, 925 So. 2d at 811 (internal quotation mark omitted) (quoting *Williams*, 794 So. 2d at 187).

III.     *Whether McDaniel's conviction was against the overwhelming weight of the evidence*.

¶25. Lastly, McDaniel argues that the verdict was contrary to the weight of the evidence because no evidence of an unnecessary imminently dangerous act existed. This Court,

---

was "way after [the first]" and that the shooting occurred around 3:00 a.m. Although the timing is unclear, a significant amount of time elapsed between the first and second altercations based on witness testimony.

however, finds that the evidence supported McDaniel's second-degree-murder conviction.

¶26.    Regarding challenges to the weight of the evidence, this Court "views the evidence 'in the light most favorable to the verdict.'" *Coleman v. State*, 411 So. 3d 137, 145 (Miss. 2025) (internal quotation mark omitted) (quoting *Moore v. State*, 348 So. 3d 322, 327 (Miss. 2022)). This Court "will not disturb a jury verdict on a weight-of-the-evidence challenge, unless we find that the verdict 'is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable justice.'" *Id.* (internal quotation mark omitted) (quoting *Moore*, 349 So. 3d at 327). The State receives "the benefit of all favorable inferences that may reasonably be drawn from the evidence" in this analysis. *Id.* (internal quotation marks omitted) (quoting *Brown*, 995 So. 2d at 702). This Court has consistently held that "[t]he standard for reversing a jury's verdict as against the overwhelming weight of the evidence is very high." *Id.* (internal quotation marks omitted) (quoting *Jones v. State*, 390 So. 3d 498, 503 (Miss. 2024)).

¶27.    Regarding factual determinations, "[i]ssues of fact and credibility are the primary responsibility of the trier of fact. Accordingly, this Court should not reweigh the facts nor substitute its judgment for that of the fact finder as to credibility issues." *Williams v. State*, 391 So. 3d 1151, 1158 (Miss. 2024) (internal quotation marks omitted) (quoting *McFadden v. Miss. State Bd. of Med. Licensure*, 735 So. 2d 145, 152 (Miss. 1999)). Furthermore, this Court has held that "[c]onflicts in the evidence are for the jury to resolve." *Eubanks v. State*, 341 So. 3d 896, 912 (Miss. 2022) (internal quotation marks omitted) (citing *Williams v.*

13

*State*, 64 So. 3d 1029, 1033 (Miss. Ct. App. 2011)).

¶28. Evidence exists based on this record to support McDaniel's conviction. A jury could reasonably find that firing a gun into a crowd of people while inside of a car is an unnecessary, imminently dangerous act based on the testimony and evidence presented. Indeed, in his phone call with Davis that was played for the jury, McDaniel admitted to firing his weapon into a group of people. Any conflicting evidence as to whether McDaniel acted in self-defense was a question for the jury. *Eubanks*, 341 So. 3d at 912 (citing *Williams*, 64 So. 3d at 1033). Therefore, viewing "the evidence 'in the light most favorable to the verdict[,]'" McDaniel's conviction was not against the overwhelming weight of the evidence. *Coleman*, 411 So. 3d at 145 (internal quotation mark omitted) (quoting *Moore*, 349 So. 3d at 327).

## CONCLUSION

¶29. For these reasons, this Court affirms McDaniel's second-degree-murder conviction.

¶30. **AFFIRMED.**

**KING AND COLEMAN, P.JJ., ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**